IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:11-cv-00118-RLV-DSC

DOUGLAS H. BOUTIN,           )
                             )
        Plaintiff,           )
                             )
    v.                       )   **MEMORANDUM AND ORDER**
                             )
HAMPTON INN, HICKORY, LLC,   )
and BW HICKORY, LLC,         )
                             )
        Defendants.          )
                             )

**THIS MATTER** is before the Court on Defendant Hampton Inn Hickory, LLC, and BW Hickory, LLC's Motion for Summary Judgment.[1] (Doc. 15.)

## I. PROCEDURAL AND FACTUAL HISTORY

From roughly July of 1994 to April of 2010, Plaintiff Boutin was employed at a hotel owned by Defendants. During this time, the hotel had two maintenance-engineer positions: a Chief Maintenance Engineer and a Maintenance Engineer, the former a salaried, "on call" position, and the latter an hourly wage position.[2] As the hotel's Maintenance Engineer, Plaintiff assisted in performing day-to-day maintenance functions, including, for example, room upkeep, painting, plumbing, and electrical work.

In February 2009, Plaintiff suffered a stroke while working at the hotel. Since this stroke, Plaintiff has walked with a noticeable limp and has experienced a loss of feeling in his fingers. (Doc. 15-5 at 19–20.) Upon returning to work after a nine-month absence, however, Plaintiff was

---

[1] On or about May 18, 2010, Defendant Hampton Inn Hickory, LLC, amended its Articles of Organization, effectively changing its name to BW Hickory, LLC.
[2] These positions, and the duties they entailed, otherwise appear to be substantially identical.

1

eventually released to full employment with no lifting restrictions, though he was permitted to take ten-minute breaks as needed. (Doc. 15-4 at 55–56; Doc. 15-5 at 20.)

On or about April 9, 2010, Plaintiff was informed by the hotel's General Manager, Jeff Wagner,[3] that "due to the economy and budget" and because the hotel "only need[ed] one maintenance man on the property," Plaintiff's position, among others, was being terminated.[4] (Docs. 15-5 at 16.) The position of Maintenance Engineer has since not been reestablished, though the Chief Maintenance Engineer may have continued to call Plaintiff for assistance even after Plaintiff had been terminated. (*Id.* at 16, 71) (noting further that Plaintiff "didn't bother to talk to" Mr. Woody). Construing the summary-judgment record in the light most favorable to Plaintiff, it has been established that Plaintiff's performance met or exceeded his employer's legitimate expectations, and even that he outperformed his salaried counterpart, Mr. Woody. (*See, e.g.*, *id.* at 78.)

Plaintiff filed his Complaint on September 1, 2011, at the age of sixty-five, asserting violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), 81 Stat. 602, as amended, 29 U.S.C. § 621 *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 104 Stat. 328, as amended, 42 U.S.C. § 12101 *et seq.* (Doc. 1 at 4–5.)

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the initial responsibility of informing the district court of the basis for its

---

[3] Mr. Wagner was retained as General Manager in December of 2009, replacing Joe Aldredge, who had previously served as General Manager back to 1997.

[4] The salaried position of Chief Maintenance Engineer, which had twice been offered to and refused by Plaintiff on prior occasions, was preserved. (Doc. 15-5 at 33) (explaining that Plaintiff had refused this position because he "wanted to remain on an hourly rate of pay"); (Doc. 18 at 2). Brian Woody, who had previously worked in the hotel's housekeeping and maintenance departments but was comparatively inexperienced, was thus given the position of Chief Maintenance Engineer. Mr. Woody was thirty-two years old at the time of Plaintiff's termination.

motion and identifying those particular portions of the record before the Court that the movant believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In the event this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3. Thus, the nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324. Rather, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a motion for summary judgment, the Court must view the evidence and any reasonable inferences arising therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Nevertheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

A. ADEA Claim

The ADEA forbids "an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age." 29 U.S.C. § 623(a) (emphasis added) (addressing non-federal employers); *cf.* 42 U.S.C. § 2000e-2(m) (containing instead "motivating factor" language since the enactment the Civil Rights Act of 1991, 105 Stat. 1071). Maintaining that this statutory text cannot be interpreted any other way, particularly in light of

Congress's choice not to modify the ADEA's language of causation as it had Title VII's, the United States Supreme Court has held that a plaintiff pursuing an ADEA claim must prove that age was the "but for" cause of the challenged adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 179–80 (2009) (declining to apply a mixed-motive standard). While this standard does not require Plaintiff to show that age was the sole motivating factor in the employment decision, if there is no genuine dispute that age was not the determining reason behind the adverse action, summary judgment as to this claim is appropriate.

There is much discussion in the parties' memoranda of the burden-shifting framework established for Title VII claims in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a long-time centerpiece of employment-discrimination law. Although this Court has applied the *McDonnell Douglas* test to ADEA claims, *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513–14 (4th Cir. 2006), it is unclear whether this test retains any utility in light of the ADEA's newly clarified but-for causality, *see Gross*, 557 U.S. at 175 n.2, 178 n.5 (noting that "the Court has not definitively decided whether the evidentiary framework of [*McDonnell Douglas*] utilized in Title VII cases is appropriate in the ADEA context" and further discussing the "motivating factor" language of Title VII and the inappropriateness of shifting the burden of persuasion in ADEA cases). Nonetheless, because *McDonnell Douglas* shifts only the burden of production, the Court will continue to apply its framework to ADEA claims until instructed otherwise, all the while recognizing that plaintiffs retain at all times the burden of persuasion to establish that age was the but-for cause of any challenged, adverse employment action. *Cf. Dall v. St. Catherine of Siena Med. Ctr.*, No. 11-0444, 2013 WL 4432354, at *19 (E.D.N.Y. Aug. 14, 2013) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013)) (holding that in order for his Title VII retaliation claim to survive summary judgment, the plaintiff is required to show during the

final stage of the burden-shifting framework that retaliation was a but-for cause of employer's alleged adverse action); *Brooks v. D.C. 9 Painters Union*, No. 10-7800, 2013 WL 3328044, at *4 (S.D.N.Y. July 2, 2013) (stating that but-for causation must be proved if the defendant articulates a legitimate, non-retaliatory reason for the adverse employment action).

Per *McDonnell Douglas*, then, Plaintiff must first establish a prima facie case of age discrimination by a preponderance of the evidence. *Warch*, 435 F.3d at 513. To do this, Plaintiff must adequately demonstrate that (1) he is a member of the protected age group; (2) he was qualified for the job and met Hampton Inn's legitimate expectations; (3) he was discharged despite his qualifications and performance; and (4) following his discharge, he was replaced by a substantially younger individual with comparable qualifications, the position remained open and Hampton Inn continued to pursue similarly qualified applicants, or persons outside the age class were retained in the same position or there is some other evidence that Hampton Inn did not treat age neutrally in deciding to dismiss Plaintiff. *Id.*; *Miles v. Dell, Inc.*, 429 F.3d 480, 485 (4th Cir. 2005); *Jeffers v. Lafarge N. Am., Inc.*, 622 F. Supp. 2d 303, 316 (D.S.C. 2008) (citing *Herold v. Hajoca Corp.*, 864 F.2d 317, 319–20 (4th Cir. 1988)). In a reduction-of-force case, a plaintiff's qualifications and performance may be considered relative to others similarly employed, and the prima facie case may be made by showing that the employer's selection process produced a residual work force containing some unprotected persons who were performing at a level lower than that at which the plaintiff was performing. *Bello v. Bank of Am. Corp.*, 320 F. Supp. 2d 341, 347 (D. Md. 2004) (citing *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993)).

If Plaintiff is successful, the burden shifts to Defendants to demonstrate "a legitimate, nondiscriminatory reason" for Plaintiff's termination. *Warch*, 435 F.3d at 513–14. An employer's burden at this stage "is one of production, not persuasion; it can involve no

5

credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (internal quotation marks and citation omitted). If Defendants meet this burden, "the presumption of discrimination created by the prima facie case disappears from the case and the plaintiff must prove that the proffered justification is pretextual." *Warch*, 435 F.3d at 514 (internal quotation marks omitted). In addition, although in appropriate circumstances "a plaintiff's prima facie case [of discrimination], combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," *Reeves*, 530 U.S. at 148, Plaintiff shoulders the ultimate burden of showing that a necessary reason for his termination was his age, *Gross*, 557 U.S. at 173 (holding that "the burden of persuasion [n]ever shifts to the party defending an alleged mix-motives discrimination claim brought under the ADEA").

This ultimate burden is a heavy one to carry, and as will be discussed in more detail, Plaintiff does not even come close on this record; the evidence upon which Plaintiff relies is insufficient to raise an issue of material fact.

First, however, as regards Plaintiff's prima facie case of discrimination, Plaintiff has readily satisfied the first three elements listed above. The Court here presumes, without deciding, that the maintenance-engineering positions in issue are sufficiently similar to permit Plaintiff's satisfaction of the fourth element, though the salaried-hourly distinction is a strong one, as recognized below.

Having presumed Plaintiff's prima facie case as established, the Court finds that Defendants have satisfactorily offered a legitimate, nondiscriminatory reason for their employment decision, that is, declining business, which obviated the need for a second maintenance engineer.

Plaintiff has failed to demonstrate that this reason is merely a pretext for discrimination. Plaintiff has argued that because he was the more skilled of the two maintenance engineers, which is not a matter in dispute at this stage, his termination was economically unjustified. Significantly, however, Mr. Woody was a salaried employee. Where there is a reduction of force, any remaining employees obviously shoulder a comparatively greater workload, and it may be sensible for an employer facing declining revenues to have the salaried workers assume this augmented workload at a fixed cost. This position is particularly forceful where the hourly worker had been receiving substantial overtime (Doc. 15-3 at 44–45), and even found it in his self-interest to maintain an hourly status when offered a salaried position (Doc. 15-5 at 33). Therefore, the positions here at issue, similar though they are, appear sufficiently different such that the termination of an hourly employee neither establishes as pretextual the employer's economic justification for discharge nor that such termination was done discriminatorily where a younger, salaried counterpart remains employed. The mere fact that a younger worker consequently assumed a greater workload "is not conclusive of age bias," *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (4th Cir. 1994), and to the extent Plaintiff asserts some lesser action, such as having Plaintiff work reduced hours, was required of Defendants, "[i]t is not for this court or any other governmental agency to direct the business practices of any company. In the context of this case, [Defendants were] free to make [their] business decisions, including reorganizing [their] work force, so long as it did not violate the ADEA," *Equal Emp't Opportunity Comm'n v. Clay Printing Co.*, 955 F.2d 936, 946 (4th Cir. 1992).

Likewise, Plaintiff has offered no other evidence "sufficiently probative of . . . discrimination." *Duffy v. Belk, Inc.*, 477 Fed. App'x 91, 95–96 (4th Cir. 2012) (quoting *Mereish v. Walker*, 359 F.3d 330, 335 (4th Cir. 2004)). Plaintiff's evidence of having to fill out a daily log

upon his return or his perception that the hotel's owner, Mr. Lail, viewed him strangely is insufficient to establish age as a but-for cause of his termination. (Doc. 15-5 at 22–24.)

B. ADA Claim

To establish a prima facie wrongful discharge claim under the ADA, a plaintiff must show that "(1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Haulbrook v. Michelin N. Am.,* 252 F.3d 696, 702–03 (4th Cir. 2001).

Again, as evidence in support of his claim for wrongful termination, Plaintiff notes (1) one occasion on which Mr. Aldredge told Plaintiff not to enter the hotel's lobby while the hotel's owner was there, (2) another occasion on which the hotel's owner "looked at [Plaintiff] in a strange way . . . and [Plaintiff] figured, well, . . . maybe that's why [he] got fired after that 'cause [the hotel's owner] saw me limping up the walkway," and (3) his unique requirement of filling out a daily work log. (Doc. 15-5 at 22–24.) Such evidence is insufficiently probative of discrimination and fails to establish a genuine issue of material fact.

## IV. CONCLUSION

"When viewed in its entirety, this case is plainly one about economic problems causing layoffs, not one of animus leading to the discharge of employees based on age" or disability. *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir. 1994). Plaintiff's evidence simply does not support an inference that the employer's action was motivated by discriminatory animus. **IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment (Doc. 15) be **GRANTED**.

Signed: October 9, 2013

Richard L. Voorhees
United States District Judge